

**Office of the New York State Attorney General**

**Letitia James
Attorney General**

<u>Via ECF</u>                                                                                                                        December 1, 2025

Hon. Vincent L. Briccetti
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re: <u>Brooks v. Finnegan</u>, 22 Cv. 6283 (VB)(JCM)

Dear Judge Briccetti:

      This Office represents Defendants Finnegan, Wollman, and Gould, all current or former New York State Police ("NYSP") employees, in this action. Defendants, pursuant to Your Honor's Individual Rules and the deadlines set by the Court, request a pre-motion conference regarding Defendants' anticipated summary judgment motion in light of the fact that the parties were not able to reach a settlement. The following is not a complete summary of all of Defendants' potential arguments.

      <u>Background</u>

      On July 26, 2019, Plaintiff arrived at the Somers Westchester NYSP Barracks with his mother and cousin to have the NYSP sign a parole form required by New Hampshire authorities whenever a New Hampshire parolee leaves and returns to the state. Plaintiff is a convicted sex offender who served ten years in prison for molesting a young child in New Hampshire. Plaintiff had been visiting family in New York and planned to return to New Hampshire that day. Initially, Plaintiff spoke to Defendant Finnegan, who was unfamiliar with the form. Plaintiff was belligerent with Defendant Finnegan when Defendant Finnegan did not comply with his request to sign the form. During this time, Plaintiff began filming the interaction. Plaintiff was told he would need to go to White Plains to have the form signed. Plaintiff continued to be belligerent.

      During his discussion with Plaintiff, Defendant Finnegan walked by Plaintiff and made incidental contact with him. On the video, Plaintiff is heard claiming that he was shoved by Defendant Finnegan, which is not demonstrated by the video. At that point, Defendant Wollman, who had come outside the barracks to see what was happening, also spoke to Plaintiff. All present then went inside the barracks because Plaintiff's mother needed to use the bathroom. With the parole form not being signed, Plaintiff continued to be frustrated and belligerent. Plaintiff then left the barracks to have a "smoke" and went to his vehicle. Based on prior discussions with Plaintiff's mother regarding Plaintiff's use of medical marijuana to calm himself down, Defendants Wollman and Finnegan believed Plaintiff intended to smoke marijuana in the barracks parking lot in his vehicle. Defendants Finnegan and Wollman followed Plaintiff to the vehicle where they smelled marijuana. Plaintiff, who was in the vehicle, was asked if he had medical authorization for the marijuana the Defendants believed he was planning to smoke. Plaintiff did not deny that he had

said he was going to smoke marijuana and, instead, asked whether Defendants had a "warrant" for the question and stated, "piss off, freedom of speech." Plaintiff then informed Defendants that he had a medical marijuana card. When Plaintiff was told that his medical marijuana card was not valid in New York, that marijuana possession was illegal, and asked if he had marijuana in his possession, Plaintiff stated "I have your mother in my mouth bitch." Plaintiff, who was sitting in the passenger side of the car, was directed to exit the car. After Plaintiff did not comply, Defendants Finnegan and Wollman removed Plaintiff from the vehicle. A struggle ensued with Defendants Finnegan, Wollman, and Plaintiff falling to the pavement. Plaintiff's mother conceded at her deposition that it was not unreasonable for Defendants to believe Plaintiff was attempting to smoke marijuana in the vehicle in light of the discussion that took place prior to the incident.

Defendants state that Plaintiff was kicking and fighting them, which caused the fall on the parking lot pavement. The photographs taken by NYSP of Plaintiff and Defendants are entirely consistent with Defendants' version of the events as no serious injuries are shown, just scratches. Plaintiff alleges a brutal beating involving him repeatedly getting punched in the face and other parts of his body outside of his vehicle and back in the barracks when he was taken into custody, none of which is demonstrated by the photographs or any other evidence in the case.

Plaintiff alleges that Defendant Gould then arrived at the scene and spoke to Plaintiff about his condition and the incident. The Complaint does not state that Defendant Gould witnessed any of the incident. At his deposition, Plaintiff acknowledged that he may have confused Defendant Gould with non-party Sgt. Jason Timko, who prepared an Administrative Investigation Report dated July 26, 2019, and who was present in the barracks and interviewed Plaintiff, but also did not see any of the incident. Defendant Gould arrived later and conducted the search of the vehicle in which burnt marijuana residue (which was sufficient to charge Plaintiff with possession) and marijuana pipes were found, as well as a functioning flint lock gun owned by Plaintiff's cousin.[1]

Defendant Gould, who prepared the relevant paperwork, intended to charge Plaintiff with Second Degree Assault, Disorderly Conduct, Resisting Arrest, and Unlawful Possession of Marijuana, which at that time was a crime. Ultimately, only accusatory instruments for Second Degree Assault, Disorderly Conduct, and Resisting Arrest were prepared by Defendant Gould because, at the time, the Westchester District Attorney was not bringing minor marijuana charges such as would be available here, which is why no accusatory instrument was drafted for that charge. Plaintiff alleges that he remained in custody until August 1, 2019, when his mother was able to post his bail. Ultimately, after negotiations and a series of adjournments and virtual appearances, Plaintiff accepted an Adjournment in Contemplation of Dismissal on May 6, 2022, as to the resisting arrest and disorderly conduct charges, with the assault charge being withdrawn.

  False Arrest/Malicious Prosecution Claims

---

[1] Charges were brought against Ms. Harding for possessing an unlicensed (in New York) firearm and she accepted an adjournment in contemplation of dismissal to resolve the charges. Her arrest was the subject of a separate lawsuit that was dismissed by this Court (Harding v. Finnegan, 22 Civ. 6285 (SDNY)) on September 26, 2024.

Hon. Vincent L. Briccetti  
December 1, 2025   Page 3 of 3

Probable cause to arrest "'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). It is also a defense to a claim of malicious prosecution. Manganiello v. City of N.Y., 612 F.3d 149, 161-62 (2d Cir. 2010). "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard, 25 F.3d at 102. Based on the undisputed record, at a minimum, there was probable cause to arrest Plaintiff for possession of marijuana, which, at the time, was still a crime. The evidence also shows that Plaintiff resisted his arrest and attempted to prevent his removal from his vehicle when officers Finnegan and Wollman attempted to remove him and arrest him and that all three fell to the ground. Moreover, Defendant Gould, who prepared the relevant materials with resect to Plaintiff's arrest, was not present during the events in question. He was entitled to reasonably rely on what he was told by his fellow officers and his actions were objectively reasonable and did not violate clearly established law. See Loria v. Gorman, 306 F.3d 1271, 1288 (2d Cir. 2002) ("an officer is entitled to rely on his fellow officer's determination that an arrest was lawful"); Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014) (discussing clearly established law and objectively reasonable conduct in the context of qualified immunity).

Excessive Force/Assault/Failure to Intervene

As an initial matter, Plaintiff's Complaint, which was drafted with the assistance of counsel, does not actually list a cause of action for excessive force/assault. If one is read into the pleadings, it should be noted that Defendant Gould was not present when Plaintiff alleges excessive force was used on him and any claims related to the use of force should be dismissed as to him. Any state law tort claims are also time-barred by the one-year statute of limitations. To the extent that the pleadings can be read to assert an excessive force or assault claim against Defendant Finnegan for allegedly making contact with Plaintiff well before the arrest, the alleged contact was so minor it is not actionable. It is also Defendants' position that the initial force used by Defendants' Wollman and Finnegan was reasonable as a matter of law to remove Plaintiff from his vehicle after failing to follow orders to exit voluntarily. In the alternative, it was not objectively unreasonable and not a violation of clearly established law for Defendants to have used force under those circumstances to remove Plaintiff. See Plumhoff, 134 S. Ct. at 2023. Finally, Plaintiff's allegations regarding a brutal extended beating are implausible given the photographic and other evidence and, accordingly, his excessive force claim should be dismissed. See Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005) (affirming dismissal of implausible claims).

We thank the Court for its consideration.

Respectfully submitted,

*/s/ Jeb Harben*  
Jeb Harben  
Assistant Attorney General  
(212) 416-6185  
jeb.harben@ag.ny.gov

cc:   Joseph A. Brooks (by ECF)