UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH A. BROOKS,

                          Plaintiff,

      - against-

STATE OF NEW YORK, et al.

                        Defendants.

Docket Number
22-CV-6283 (VB)

## DEFENDANTS' LOCAL RULE 56.1 STATEMENT

Pursuant to Local Rule 56.1 of the Civil Rules of the Southern District of New York and this Court's Individual Rules, Defendants, by their attorney, LETITIA JAMES, Attorney General of the State of New York, hereby submits the following statement of facts, which are not in dispute, and which entitle them to summary judgment as a matter of law.

1.    On July 26, 2019, Plaintiff, Joseph Brooks, arrived at the Somers Westchester NYSP Barracks ("the Barracks") with his mother, Wanda Duryea, and cousin, Cheyenne Harding. Complaint (ECF No. 2) ¶ 18.

2.    Plaintiff is a convicted New Hampshire sex offender who served ten years in prison for child molestation. Harben Decl., Exh. A (March 13, 2025 Deposition of Joseph Brooks) at p. 40; Complaint ¶ 26.

3.    Plaintiff had been visiting New York and planned to return to New Hampshire that day and came to the Barracks to have a form signed by local law enforcement that he believed was required by New Hampshire parole authorities. Complaint ¶ 18.

4.    Initially, in the Barracks parking lot Plaintiff spoke to Trooper Finnegan, who had been told to return to the Barracks to speak with Plaintiff who had requested assistance, but

1

Trooper Finnegan was unfamiliar with the form. Harben Decl., Exh. E (Video 20190726-091520606 (submitted to the Court via compact disc); March 2, 2026 Declaration of Timothy Finnegan ("Finnegan Decl.") ¶ 6.

5. Plaintiff was belligerent with Trooper Finnegan when Trooper Finnegan did not comply with his request to sign the form. See generally Harben Decl., Exh. E (Video 20190726-091520606 (submitted to the Court via compact disc); Finnegan Decl. ¶¶ 6-7.

6. Plaintiff was told he would need to go to White Plains to have the form signed by local Westchester County police. Harben Decl., Exh. E (Video 20190726-091520606); Finnegan Decl." ¶¶ 6-7.

7. Around this time, Plaintiff had begun filming the interaction with his phone. Harben Decl., Exh. E; Finnegan Decl. ¶ 7.

8. Plaintiff continued to be belligerent and was circling Trooper Finnegan's vehicle. Id.

9. Trooper Finnegan exited his vehicle and as he walked toward Plaintiff, Plaintiff thrust his telephone toward Trooper Finnegan who nudged Plaintiff with his forearm. Finnegan Decl. ¶ 8. At that time Plaintiff claimed that he had been shoved in the chest by Trooper Finnegan, which is not reflected in the video recording. Harben Decl., Exh. E (time stamp 1:47).

10. Investigator Wollman, who had come outside the barracks to see what was happening, also spoke to Plaintiff who remained agitated and expressed frustration that the form was not getting signed. Harben Decl, Exh. E (time stamp 1:52); March 2, 2026 Declaration of James Wollman ("Wollman Decl.") ¶ 7.

11. Defendants Finnegan and Wollman, as well as Plaintiff, his mother, and cousin, went inside the barracks. Id. ¶ 9. With the parole form not being signed, Plaintiff continued to be

frustrated and belligerent. Id. Plaintiff told Defendant Wollman that he would only be able to calm down if he were to use his "medication." Complaint ¶ 41.

12. The Complaint alleges that Plaintiff told Defendant Wollman that he was leaving the barracks to have a "smoke" in his vehicle and referred to Defendants Wollman and Finnegan as "fucking cunts." Id. ¶¶ 42-43.

13. Defendants Finnegan and Wollman recalled that Plaintiff indicated that he was leaving to smoke a "joint." Wollman Decl. ¶ 9; Finnegan Decl. ¶ 11.

14. Prior to this Ms. Harding had stated to Plaintiff that Plaintiff should not have told Defendants Wollman and Finnegan that he wished to use medical marijuana as his "medicine." Complaint ¶ 46.

15. Ms. Duryea conceded at her deposition that it was not unreasonable for Defendants to believe that Plaintiff was attempting to smoke marijuana in light of a discussion that took place prior to the incident regarding Plaintiff's use of medical marijuana. Harben Decl., Exh. B (March 13, 2025 Deposition of Wanda Duryea ("Duryea Dep.") at pp. 44-45.

16. Due to their belief that Plaintiff intended to smoke a marijuana joint on the premises, shortly after Plaintiff left the Barracks, Defendants Finnegan and Wollman followed Plaintiff to his vehicle that was parked in the barracks parking lot where he was seated in the passenger seat of his vehicle and where they smelled marijuana. Wollman Decl. ¶¶ 9-10; Finnegan Decl. ¶¶ 11-12.

17. Plaintiff's family continued to record the interaction on their telephone, but after Plaintiff left the NYSP barracks only the audio was recorded as the video was not directed at any of the persons involved. Harben Decl., Exh. D (Video 20190726-092212619).

18. Plaintiff was asked if he had valid medical authorization for "the weed you say you

were going to smoke." Harben Decl., Exh. D (time stamp :12-:18).

19. Plaintiff did not deny that he had said he was going to smoke "weed" and instead asked whether Defendants had a "warrant" for the question and stated, "piss off, freedom of speech." Harben Decl., Exh. D (time stamp :19 - :22).

20. Immediately prior to this, Ms. Duryea told Plaintiff not to do "it" on state property Harben Decl., Exh. D (time stamp :07-:11).

21. Plaintiff informed Defendants that he had a medical marijuana card (which was valid in Maine and New Hampshire), to which he was advised that the card was not valid in New Harben Decl., Exh. D (time stamp :38 - :51).

22. Plaintiff continued to be belligerent and claimed the medical marijuana card was good nationally. Harben Decl., Exh. D (time stamp :51 - :56).

23. When Plaintiff was told that his medical marijuana card was not valid in New York, that marijuana possession was illegal, and was asked whether he possessed marijuana, Plaintiff did not respond to the question, but rather, stated "I have your mother in my mouth bitch." Harben Decl., Exh. D (time stamp :57 – 1:01).

24. At no time did Plaintiff deny that he possessed marijuana. Id.; Wollman Decl. ¶ 11; Finnegan Decl. ¶ 13.

25. Plaintiff's interrogatory responses claims that 1.2 ounces of "cannabis dispensary medication" was seized from Plaintiff and rendered useless while retained in custody. Harben Decl., Exh. F at p. 6.

26. Defendant Gould's search found marijuana residue in Plaintiff's vehicle. Gould Decl. ¶¶ 9 -10, Exh. B.

27. After being questioned about potential marijuana possession, Plaintiff, who was

4

sitting in the passenger side of the car, was repeatedly directed to step out of the vehicle. Harben Decl., Exh. D (time stamp :59 – 1:03); Finnegan Decl. ¶ 14; Wollman Decl. ¶ 12.

28. After Plaintiff did not comply, Defendants Finnegan and Wollman removed Plaintiff from the vehicle. Id.

29. A struggle ensued while Plaintiff was removed from his vehicle with Defendants Finnegan, Wollman, and Plaintiff falling to the pavement. Finnegan Decl. ¶ 15 - 20; Wollman Decl. ¶ 13 – 15.

30. Plaintiff claims that excessive force was applied to him through brutal beatings by Defendants Wollman and Finnegan after Plaintiff was removed from his vehicle and later when he was taken inside the Barracks. Complaint (ECF No. 2) at ¶¶ 62 – 63, 72 – 73; Harben Decl., Exh. A (Brooks Depo.) at pp. 119 (l. 16) – 120 (l. 16), 125 (l. 6 – 17), 128 (l. 15 – 17), 129 (l. 7 – 15).

31. Plaintiff testified that no other NYSP were present during this alleged use of force. Id. at pp. 125 (l. 22 – 25). 134 (l. 5 – 8).

32. Plaintiff claims that Defendant Gould "verbally" assaulted him after the incident, id. at p. 130 (l. 8 – 11) and acknowledged that he could be confusing Defendant Gould with non-party Sgt. Timko, who also arrived at the Barracks after the incident. Id. at p. 131 (l. 5 – 7).

33. At his deposition Plaintiff appeared to be claiming that Defendant Gould did not properly look into his claim that he had been assaulted, not that he was present during any assault. Id. at p. 135 (l. 5 – 14).

34. Plaintiff and Defendants Wollman and Finnegan all had their injuries photographed by non-party NYSP Sgt. Jason Timko, who arrived at the Barracks after the incident. February 27, 2026 Declaration of Jason Timko ("Timko Decl.") at ¶¶ 7 – 8 and Exhs. B, C, and D.

35. The photographs taken by Sgt. Timko show no serious injuries, just abrasions. Id.

36. Sgt. Timko also interviewed Plaintiff and prepared an Administrative Investigation Report dated July 26, 2019 (Timko Decl. at ¶¶ 5 – 6, Exh. A), noting that Plaintiff had made no allegations of excessive force against any NYSP personnel, that Plaintiff stated that he was not injured, and that he did not wish to receive medical attention. Id.

37. Defendant Gould arrived at the Barracks later and conducted the search of the vehicle in which burnt marijuana residue (which was sufficient to charge Plaintiff with possession) and marijuana pipes were found, as well as a functioning flint lock antique replica gun owned by Plaintiff's cousin, Ms. Harding.[1] March 2, 2026 Declaration of Joseph Gould ("Gould Decl.") at ¶¶ 9 – 11.

38. Because Ms. Harding claimed ownership over the unlicensed firearm, in Defendant Gould's discretion, he chose not to charge Plaintiff with illegal firearm possession. Id. ¶ 11.

39. Defendant Gould had initially intended to charge Plaintiff with unlawful possession of marihuana under New York Penal Law § 221.05 (Gould Decl., Exh. A), but after discussing the matter with a representative from the Westchester County District Attorney that day, he was advised that their office was not prosecuting minor marihuana offenses of that type at that time and, as a result, Defendant Gould did not prepare an accusatory instrument on that charge. Gould Decl. at ¶ 12.

40. Defendant Gould ultimately prepared accusatory instruments charging Plaintiff with Assault in the Second Degree (Penal Law § 120.05), Disorderly Conduct (Penal Law § 240.20), and Resisting Arrest (Penal Law § 205.30). Id. at ¶¶ 13 – 15, Exh. C.

---

[1] Charges were brought against Ms. Harding for possessing an unlicensed (in New York) firearm Her arrest was the subject of a separate lawsuit that was dismissed by this Court (Harding v. Finnegan, 22 Civ. 6285 (SDNY)) on September 26, 2024.

6

41. Defendant Gould's decision to prepare the above accusatory instruments was based on information provided to him by Defendants Finnegan and Wollman, neither of whom he had reason not to believe, as well as his own observation of their injuries. Id. at ¶¶ 14-15.

42. Neither Defendant Gould nor Sgt. Timko witnessed the arrest of Plaintiff or the use of any force by Defendants Finnegan and Wollman. Id. at ¶¶ 4-6; Timko Decl. ¶¶ 3-4.

43. Plaintiff ultimately obtained an Adjournment in Contemplation of Dismissal ("ACD") on May 6, 2022, as to the Resisting Arrest and Disorderly Conduct charges, and the Second Degree Assault charge was withdrawn. See Harben Decl., Exh. G.

**WHEREFORE**, Defendants should be granted summary judgment and this action dismissed, and the Court should grant such other and further relief as this Court deems appropriate.

Dated: New York, New York
March 2, 2026

LETITIA JAMES
Attorney General of the State of New York
<u>Attorney for the Defendants</u>
By:
    */s/Jeb Harben*

JEB HARBEN
Assistant Attorney General
28 Liberty Street, 18th Floor
New York, N.Y. 10005
(212) 416-6185
Jeb.harben@ag.ny.gov