UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH A. BROOKS,

                Plaintiff,

- against-

STATE OF NEW YORK, et al.

                Defendants.

Docket Number
22-CV-6283 (VB)

# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF THEIR MOTION FOR
# SUMMARY JUDGMENT

LETITIA JAMES
Attorney General, State of New York
<u>Attorney for Defendants</u>
28 Liberty Street
New York, New York 10005
(212) 416-6185

JEB HARBEN
Assistant Attorney General
    <u>of Counsel</u>

## PRELIMINARY STATEMENT

This memorandum of law is submitted by defendants, former New York State Police ("NYSP") Trooper Timothy Finnegan, and current NYSP Investigators James Wollman and Timothy Gould, in support of their Fed. R. Civ. P. 56 motion for summary judgment. Defendants seek summary judgment on the claims against them arising from Plaintiff's allegation that Plaintiff was falsely arrested and maliciously prosecuted stemming from events that took place on July 26, 2019, and that Defendants Finnegan and Wollman used excessive force on him that day. Summary judgment is proper because the undisputed facts in the evidentiary record support judgment in their favor as a matter of law and because they are entitled to qualified immunity.

## BACKGROUND

On July 26, 2019, Plaintiff, Joseph Brooks, arrived at the Somers Westchester NYSP Barracks ("the Barracks") with his mother, Wanda Duryea, and cousin, Cheyenne Harding. Complaint (ECF No. 2) ¶ 18. Plaintiff is a convicted New Hampshire sex offender. Id. ¶ 26. Plaintiff had been visiting New York and planned to return to New Hampshire that day and came to the Barracks to have a form signed by local law enforcement that he believed was required by New Hampshire parole authorities. Id. ¶ 18. Initially, in the Barracks parking lot Plaintiff spoke to Trooper Finnegan, who had been told to return to the Barracks to speak with Plaintiff who had requested assistance, but Trooper Finnegan was unfamiliar with the form. March 2, 2026 Declaration of Timothy Finnegan ("Finnegan Decl.") ¶ 6. Plaintiff was belligerent with Trooper Finnegan when Trooper Finnegan did not comply with his request to sign the form. Id. ¶¶ 6-7. Plaintiff was told he would need to go to White Plains to have the form signed by local Westchester County police. Id. During this time, Plaintiff had begun filming the interaction with his phone. March 2, 2026 Declaration of Jeb Harben ("Harben Decl."), Exh. E.

1

Trooper Finnegan exited his vehicle and as he walked toward Plaintiff, Plaintiff thrust his telephone toward Trooper Finnegan who nudged Plaintiff with his forearm. Finnegan Decl. ¶ 8. At that time, Plaintiff claimed that he had been shoved in the chest by Trooper Finnegan, which is not reflected in the video recording. Harben Decl., Exh. E (time stamp 1:47). At that point, Investigator Wollman, who had come outside the barracks to see what was happening, also spoke to Plaintiff who remained agitated and expressed frustration that the form was not getting signed. Id. (time stamp 1:52); March 2, 2026 Declaration of James Wollman ("Wollman Decl.") ¶ 7.

Defendants Finnegan and Wollman, as well as Plaintiff, his mother, and cousin, went inside the barracks. Id. ¶ 9. With the parole form not being signed, Plaintiff continued to be frustrated and belligerent. Id. Plaintiff told Defendant Wollman that he would only be able to calm down if he were to use his "medication." Complaint ¶ 41. The Complaint alleges that Plaintiff told Defendant Wollman that he was leaving the barracks to have a "smoke" in his vehicle and referred to Defendants Wollman and Finnegan as "fucking cunts." Id. ¶¶ 42-43. Defendants Finnegan and Wollman recalled that Plaintiff indicated that he was leaving to smoke a "joint." Wollman Decl. ¶ 9 ; Finnegan Decl. ¶ 11.  Prior to this Ms. Harding had stated to Plaintiff that Plaintiff should not have told Defendants Wollman and Finnegan that he wished to use medial marijuana as his "medicine." Complaint ¶ 46. Ms. Duryea conceded at her deposition that it was not unreasonable for Defendants to believe that Plaintiff was attempting to smoke marijuana in light of a discussion that took place prior to the incident regarding Plaintiff's use of medical marijuana. Harben Decl., Exh. B (March 13, 2025 Deposition of Wanda Duryea ("Duryea Dep.") at pp. 44-45).

Due to their belief that Plaintiff intended to smoke a marijuana joint on the premises, shortly after Plaintiff left the Barracks, Defendants Finnegan and Wollman followed Plaintiff to

2

his vehicle where he was seated in the passenger seat and where they smelled marijuana. Wollman Decl. ¶¶ 9-10; Finnegan Decl. ¶¶ 11-12. Plaintiff's family continued to record the interaction on their telephone, but only the audio was recorded as the video was not directed at any of the persons involved. Plaintiff was asked if he had valid medical authorization for "the weed you say you were going to smoke." Harben Decl., Exh. D (time stamp :18). Plaintiff did not deny that he had said he was going to smoke "weed" and instead asked whether Defendants had a "warrant" for the question and stated, "piss off, freedom of speech." Id. (time stamp :19 -:22). Immediately prior to this, Ms. Duryea told Plaintiff not to do "it" on state property. Id. (time stamp :07 - :11)), which further demonstrates that it was not unreasonable for Defendants Finnegan and Wollman to have believed Plaintiff was planning on smoking marijuana, even if he ultimately did not.

Plaintiff then informed Defendants that he had a medical marijuana card (which was valid in Maine and New Hampshire), to which he was advised that the card was not valid in New York. Id. (time stamp :38-:51). Plaintiff continued to be belligerent and claimed the card was good nationally. Id. (time stamp :51-:56).When Plaintiff was told that his medical marijuana card was not valid in New York, that marijuana possession was illegal, and was asked whether he possessed marijuana, Plaintiff did not respond to the question, but rather, stated "I have your mother in my mouth bitch." Id. (time stamp :57–1:01). At no time did Plaintiff deny marijuana possession. Id.; Wollman Decl. ¶11; Finnegan Decl. ¶13.[1] Defendant Gould's search found marijuana residue in Plaintiff's vehicle. March 2, 2026 Declaration of Timothy Gould ("Gould Decl.") ¶¶ 9-10, Exh. B.

Plaintiff, who was sitting in the passenger side of the car, was repeatedly directed to step out of the vehicle. Harben Decl., Exh. D (time stamp :59–1:03); Finnegan Decl. ¶14; Wollman

---

[1] Plaintiff's interrogatory responses claim that 1.2 ounces of "cannabis dispensary medication" was seized from Plaintiff and ruined while retained in custody. Harben Decl., Exh. F at p. 6.

Decl. ¶12. After Plaintiff did not comply, Defendants Finnegan and Wollman removed Plaintiff from the vehicle. Id. A struggle ensued with Defendants Finnegan, Wollman, and Plaintiff falling to the pavement. Finnegan Decl. ¶¶15-20; Wollman Decl. ¶¶ 13–15. Plaintiff claims that excessive force was applied to him through brutal beatings by Defendants Wollman and Finnegan after Plaintiff was removed from the vehicle and later when he was taken inside the Barracks. Complaint at ¶¶ 62 – 63, 72 – 73; Harben Decl., Exh. A (Brooks Depo.) at pp. 119 (l. 16) – 120 (l. 16), 125 (l. 6–17), 128 (l. 15–17), 129 (l. 7–15). Plaintiff testified that no other NYSP were present during this alleged use of force. Id. at pp. 125 (l. 22 – 25). 134 (l. 5 – 8). Plaintiff claims that Defendant Gould "verbally" assaulted him after the incident, id. at p. 130 (l. 8–11) but acknowledged that he could be confusing Defendant Gould with non-party Sgt. Timko, who also arrived at the Barracks after the incident. Id. at p. 131 (l. 5–7). At his deposition Plaintiff appeared to claim that Defendant Gould did not properly look into his claim that he had been assaulted, not that he was present during any assault. Id. at p. 135 (l. 5–14).

Plaintiff and Defendants Wollman and Finnegan all had their injuries photographed by non-party NYSP Sgt. Jason Timko, who arrived at the Barracks after the incident. February 27, 2026 Declaration of Jason Timko ("Timko Decl.") at ¶¶ 7–8, Exhs. B, C, and D. The photographs are entirely consistent with Defendants' version of the events indicating a fall to the pavement by all involved as no serious injuries are shown, just scratches. Sgt. Timko also interviewed Plaintiff and prepared an Administrative Investigation Report dated July 26, 2019 (id. at ¶¶ 5–6, Exh. A), noting that Plaintiff had made no allegations of excessive force against any NYSP personnel, that Plaintiff stated that he was not injured, and that he did not wish to receive medical attention. Id. Defendant Gould arrived at the Barracks later and conducted the search of the vehicle in which burnt marijuana residue (which was sufficient to charge Plaintiff with possession) and marijuana

4

pipes were found, as well as a functioning flint lock antique replica gun owned by Plaintiff's cousin.[2] Gould Decl. at ¶¶ 9 – 11. Defendant Gould had initially intended to charge Plaintiff with unlawful possession of marihuana under New York Penal Law § 221.05 (Gould Decl., Exh. A), but after discussing the matter with a representative from the Westchester County District Attorney that day, he was advised that their office was not prosecuting minor marihuana offenses of that type at that time and, as a result, Defendant Gould did not prepare an accusatory instrument on that charge. Gould Decl. at ¶12. Defendant Gould ultimately prepared accusatory instruments charging Plaintiff with Assault in the Second Degree (Penal Law § 120.05), Disorderly Conduct (Penal Law § 240.20), and Resisting Arrest (Penal Law § 205.30). Id. at ¶¶ 13–15, Exh. C. Plaintiff ultimately obtained an Adjournment in Contemplation of Dismissal ("ACD") on May 6, 2022, as to the Resisting Arrest and Disorderly Conduct charges, and the Second Degree Assault charge was withdrawn. See Harben Decl., Exhs. G.

**ARGUMENT**

**I.     Standard of Review**

Fed. R. Civ. P. 56(c) provides that summary judgment is warranted if "the pleadings and discovery, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  To avoid summary judgment, a plaintiff may not rest upon the mere allegations of his pleadings but must come forward with admissible evidence showing that there is a genuine issue of material fact for trial. A plaintiff must provide more than conclusory allegations of discrimination, and mere conjecture or speculation is insufficient to defeat a properly supported summary judgment motion. See Smith v.

---

[2] Charges were brought against Ms. Harding for possessing an unlicensed (in New York) firearm Her arrest was the subject of a separate lawsuit that was dismissed by this Court (Harding v. Finnegan, 22 Civ. 6285 (SDNY)) on September 26, 2024.

5

Local 819, 291 F.3d 236, 240 (2d Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent" dismissal); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Summary judgment has long been recognized as a tool for promoting judicial economy, not as a "disfavored procedural shortcut" as summary judgment is an integral part of the Federal Rules' goal of securing the "just, speedy and inexpensive determination of every action." See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Where the parties present contested versions of the facts, those disputes are not material where, "even accepting Plaintiff's version of these facts as true, they do not preclude judgment as a matter of law in Defendants' favor." Wright v. Yacavone, 2014 WL 1165834, *6 (D. Vt. Mar. 21, 2014).

## II.     **False Arrest/Malicious Prosecution**

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotations omitted). False arrest claim requires that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. NYC, 331 F.3d 63, 75 (2d Cir. 2003). Malicious prosecution requires (1) the initiation and continuation of criminal process against plaintiff; (2) the lack of probable cause for commencing proceedings; (3) actual malice motivating the defendant's actions; and (4) termination of proceedings in plaintiff's favor. See Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).

Probable cause to arrest "'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." Weyant, 101 F.3d at 852 (quoting Bernard v. U.S., 25 F.3d 98, 102 (2d Cir. 1994)). It is also a defense to a claim of malicious prosecution.

6

Manganiello v. NYC, 612 F.3d 149, 161-62 (2d Cir. 2010). Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quotation marks and citation omitted). "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard, 25 F.3d at 102.

Based on the undisputed record, at a minimum, there was probable cause to arrest Plaintiff for possession of marijuana, which, at the time, was still a crime in New York. The evidence also shows that Plaintiff resisted his arrest and attempted to prevent his removal from his vehicle when Defendants Finnegan and Wollman attempted to remove him and arrest him after he failed to comply with their orders to exit the vehicle and that all three fell to the ground resulting in injuries. 56.1 ¶¶ 27-29.

Moreover, Defendant Gould, who prepared the relevant materials with respect to Plaintiff's arrest, was not present during the events in question. Gould Decl. ¶¶ 4-6, 13-15. As Defendant Gould was entitled to reasonably rely on his fellow officers, his actions were objectively reasonable, and did not violate clearly established law, thus he is also entitled to qualified immunity as to any claim regarding Plaintiff's arrest and prosecution. See Loria v. Gorman, 306 F.3d 1271, 1288 (2d Cir. 2002) (discussing fellow officer rule); Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014) (discussing clearly established law and objectively reasonable conduct).

### III. Excessive Force/Assault/Failure to Intervene

The Fourth Amendment's guarantee of the right against unreasonable seizure "prohibits the excessive use of force in the course of an arrest or other seizure." McMillan v. NYC, 2011 WL 6129627, at * 5 (S.D.N.Y. Dec. 9, 2011) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)). To

prevail on his excessive use of force claim, Plaintiff must "establish that an officer's use of force was unreasonable and a violation of the Fourth Amendment" (id.) and that "government interests at stake were outweighed by the nature and quality of the intrusion on [plaintiff's] Fourth Amendment interests." Amnesty Am. v. West Hartford, 361 F.3d 113, 123 (2d Cir. 2004).

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer, rather than with the benefit of hindsight, recognizing that officers are often forced to make immediate decisions in uncertain situations. "The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force." Sullivan v. Gagnier, 225 F.3d 161, 165-166 (2d Cir. 2000). Officers may not "gratuitously inflict[] pain in a manner that was not a reasonable response to the circumstances." Amnesty, 361 F.3d at 124-25. However, "the reasonableness inquiry does not allow [the court] to substitute [its] own viewpoint; [the court] must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Papineau v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quotation omitted).

Given his non-compliance with reasonable requests that Plaintiff exit his vehicle based on a reasonable suspicion that he possessed marijuana, the initial use of force to remove Plaintiff from his vehicle, which ultimately resulted in Plaintiff and Defendants falling on the pavement, was reasonable and not a gratuitous infliction of pain. Defendants should also be entitled to qualified immunity as to this initial use of force as it was objectively reasonable and not violative of clearly established law. Gonzalez v. Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (citation omitted).

Plaintiff does, however, claim that Defendants later applied additional excessive force. Supra at 4. But the level of force claimed is nowhere reflected in the contemporaneous photographs (Timko Decl., Exh. B), was not claimed by Plaintiff at his interview (id. at Exh, A) and is not

8

substantiated by medical records. In sum, where a plaintiff's claims are "'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint," summary judgment is warranted. Jeffreys v. NYC, 426 F.3d 549, 551, 555 (2d Cir. 2005) (granting summary judgment). Here, the facts alleged are contradicted by the evidentiary record, which show injuries consistent with Defendants' version of the events, permitting summary judgment here.

A "failure to [intervene] must be under circumstances making it objectively unreasonable for [an officer] to believe that his fellow officers' conduct did not violate those rights." Ricciuti v. NYC Tr. Auth., 124 F.3d 123, 129 (2d Cir. 1997). As previously discussed (supra at 4), Plaintiff does not claim that Defendant Gould was present when he was allegedly subjected to excessive force, hence he could not have failed to intervene to prevent it.

Finally, the statute of limitations for Plaintiff's assault claims (and any other intentional state law torts), including his claim that Defendant Finnegan elbowed him in passing, which can not be considered a malicious infliction of pain rising to the level of a constitutional violation (see Amnesty, 361 F.3d at 124-25), expired on March 12, 2021, one year from the incident (July 26, 2020), plus a 228-day tolling period pursuant to N.Y. Executive Order 202.8. See Allen v. Antel, 665 Fed. Appx. 9, 13 (2d Cir. 2016) (applying CPLR § 215(3) one-year statute of limitations). This action was filed on July 24, 2022, more than a year too late.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully requests that this Court grant summary judgment, dismissing the pleadings in their entirety with prejudice.

Dated: New York, New York
      March 2, 2026

Respectfully submitted,

LETITIA JAMES
Attorney General, State of New York
Attorney for Defendants

By:   */s/Jeb Harben* [3]
JEB HARBEN
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-6185
jeb.harben@ag.ny.gov

JEB HARBEN
Assistant Attorney General
 of Counsel

---

[3] The undersigned certifies that the instant memorandum of law contains 3163 words based on the word count provided by the undersigned's word processing software.