UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH A. BROOKS, Plaintiff, v. STATE TROOPER TIMOTHY FINNEGAN, INVESTIGATOR TIMOTHY P. GOULD, and INVESTIGATOR JAMES WOLLMAN, Defendants. | **OPINION AND ORDER** 22 CV 6283 (VB) |

Briccetti, J.:

Plaintiff Joseph A. Brooks, proceeding pro se, brings this action under 42 U.S.C. § 1983 and New York state law against New York State Police ("NYSP") Trooper Timothy Finnegan and NYSP Investigators Timothy P. Gould and James Wollman, arising from his July 26, 2019, arrest at the NYSP barracks in Somers, New York.[1]

Now pending is defendants' motion for summary judgment. (Doc. #84).

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

[1] The complaint also names the State of New York and NYSP. (Doc. #2 ("Compl.")). The Court previously dismissed plaintiff's claims against these entities. (Doc. #9). Plaintiff also sues Finnegan, Gould, and Wollman, as well as "other New York State Police employees," in both their official and individual capacities. (Compl.). The Court dismissed claims against all individuals in their official capacities, and dismissed, without prejudice, the unidentified individuals in their individual capacities. (Doc. #9). Plaintiff has not sought leave to file an amended complaint naming the unidentified defendants. Accordingly, the Court's assessment is limited to claims against Finnegan, Gould, and Wollman in their individual capacities.

## BACKGROUND

The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and declarations with exhibits.[2] These submissions reflect the following factual background.

I. Plaintiff Seeks Assistance with Parole Travel Form

On July 26, 2019, plaintiff, his mother, Wanda Duryea, and his cousin, Cheyenne Harding, went to the NYSP barracks in Somers, New York (the "Barracks"). Plaintiff, a convicted sex offender, who was then on parole in New Hampshire, was visiting New York and planned to return home that day. He went to the Barracks to obtain a travel form he believed he needed to leave New York and return to New Hampshire.

In the Barracks parking lot, plaintiff spoke to Finnegan, who was in a patrol car. When plaintiff asked if Finnegan could sign the form, Finnegan refused; he told plaintiff to go to White Plains to have it signed by Westchester County authorities. Around this time, plaintiff began recording the encounter on his phone. (Defs.' 56.1 ¶ 7; Doc. #87 ("Harben Decl.") Ex. E).

The parties dispute the rest of this exchange. Finnegan says he got out of his car and walked toward plaintiff. Finnegan claims that, as he approached, plaintiff "got into my personal

---

[2] Defendants submitted a Local Civil Rule 56.1 Statement. (Doc. #85 ("Defs.' 56.1")). Plaintiff submitted a consolidated filing containing responses to defendants' factual assertions, a "Statement of Material Facts in Dispute," and a memorandum of law in opposition to defendants' motion for summary judgment. (Doc. #97 ("Pl. Opp.")). Plaintiff's responses correspond to the paragraph numbers of defendants' declarations rather than to the numbered paragraphs of defendants' Rule 56.1 statement, and some do not cite record evidence, in violation of Local Rule 56.1. See Local R. Civ. P. 56.1(c)–(d). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001). Accordingly, in light of plaintiff's pro se status, the Court disregards these deficiencies and has conducted an "assiduous review of the record." Id.

space thrusting his telephone toward my face," at which point Finnegan "made incidental contact nudging Plaintiff." (Doc. #89 ("Finnegan Decl.") ¶ 8). Plaintiff denies thrusting his phone at Finnegan, and plaintiff and his family maintain Finnegan elbowed plaintiff in the chest without provocation. (Pl. Opp. at 4, 14; Doc. #95 ("Harding Decl.") ¶¶ 5–6; Doc. #93 ("Duryea Dep.") Tr. 28–29). On plaintiff's phone recording, plaintiff can be heard accusing Finnegan of shoving him in the chest. (Harben Decl. Ex. E at 1:47). Finnegan can be heard stating, "get out of my way," but it is unclear whether the officer made physical contact with plaintiff. (Id.)

Wollman then came outside and spoke with plaintiff, who remained agitated. (Defs.' 56.1 ¶ 10; Doc. #91 ("Wollman Decl." ¶¶ 5–6). Plaintiff alleges he told both Finnegan and Wollman he intended to press assault charges against Finnegan. (Compl. ¶¶ 31–32).

## II. Plaintiff's Statements Inside the Barracks

Plaintiff, Duryea, Harding, Finnegan, and Wollman proceeded to enter the Barracks. Wollman told plaintiff to settle down, and plaintiff responded the only way he could calm down was to use his "medication." (Defs.' 56.1 ¶ 11; Compl. ¶¶ 40–41). Plaintiff then said he was going to the family's vehicle to have a "smoke." (Defs.' 56.1 ¶ 12; Compl. ¶¶ 42–43). Wollman and Finnegan recall plaintiff saying he was leaving to smoke a "joint." (Defs.' 56.1 ¶ 13). Plaintiff denies saying he was going to smoke marijuana, and he alleges he went to the vehicle to roll a tobacco cigarette.

## III. Plaintiff's Arrest

Plaintiff left the Barracks and sat in the front passenger seat of the family's vehicle, which was parked in the Barracks parking lot. Harding sat in the back seat. Duryea returned to the vehicle shortly afterward. Believing plaintiff intended to smoke marijuana on the premises, Finnegan and Wollman followed him.

Finnegan and Wollman state that, when they reached the vehicle, they smelled marijuana. (Wollman Decl. ¶ 10; Finnegan Decl. ¶ 12). Plaintiff disputes that the officers smelled marijuana. Duryea testified that plaintiff was smoking tobacco. (Duryea Dep. Tr. 48).

Plaintiff's family continued recording, but the recording captures only audio. On the recording, one of the family members can be heard telling plaintiff not to do "it" on state property. (Harben Decl. Ex. D at 0:07–0:11). One of the officers then asked plaintiff whether he had valid medical authorization for "the weed you say you were going to smoke." (Id. at 0:12–0:18). Plaintiff responded by asking whether the officers had a "warrant" and saying, "piss off, freedom of speech." (Id. at 0:19–0:22). Plaintiff said he had a medical marijuana card, and the officers replied that the card was not valid in New York. Plaintiff insisted the card was valid nationally. (Id. at 0:38–0:56). One of the officers then told plaintiff that marijuana possession was illegal in New York and asked whether he had marijuana. Plaintiff did not answer the question; instead, he said, "I have your mother in my mouth bitch." (Id. at 0:57–1:01; see Compl. ¶ 57 (acknowledging "flippant remark")). Plaintiff did not deny possessing marijuana during the exchange.

According to defendants, after the officers asked plaintiff about marijuana, they repeatedly directed him to step out of the vehicle. When plaintiff did not comply, Finnegan and Wollman removed him from the vehicle. According to the officers, plaintiff struggled by kicking and punching them, and the three men fell to the pavement.

Plaintiff disputes defendants' version of events. According to plaintiff, the officers physically seized him before they issued commands to exit the vehicle. He testified the officers did not give clear commands before they "were already grabbing me and ripping me out of the car." (Doc. #94 ("Brooks Dep.") Tr. 115). He is then "thrown to the ground, slammed on,

stomped on" and can "hear my family screaming in the background." (Id. Tr. 119). Harding testified that she did not hear any officer instruct plaintiff to exit the vehicle before the officers grabbed him. (Doc. #92 ("Harding Dep.") Tr. 47). She attests that plaintiff was not resisting the officers.

The officers can be heard on the recording asking plaintiff to step out of the vehicle, but it is not clear from the recording whether they issued these commands before or after they physically seized him. (See Harben. Decl. Ex. D at 0:53–1:30). Nor does the recording show the alleged struggle between plaintiff, Finnegan, and Wollman.

The officers handcuffed plaintiff and took him inside the Barracks.

IV. Events Inside the Barracks

Plaintiff testified that, once inside, Finnegan and Wollman beat him in a back room. Specifically, he alleges that, while he was handcuffed to the wall, Finnegan punched him in the face, causing his head to hit the wall; Wollman knelt on his chest; and both officers punched him in the groin and abdomen and kicked him in the legs. Plaintiff acknowledges that, before this alleged beating, he struck the wall with his cuffed hand. Plaintiff testified no other NYSP personnel were present during the alleged use of force.

Neither Harding nor Duryea saw what happened in the back room; however, both testified that they heard fighting. Harding heard "blows being landed and [her] cousin screaming." (Harding Dep. at Tr. 50). Duryea heard fighting and her "son screaming" after Brooks was taken "back behind the lobby door." (Duryea Dep. Tr. 55).

Defendants dispute this account. Finnegan states, while in the Barracks, he attempted to subdue plaintiff. While doing so, plaintiff kicked him in the face.

Gould and non-party NYSP Sergeant Jason Timko arrived after plaintiff's arrest, and

neither witnessed the arrest nor any use of force. (Defs.' 56.1 ¶ 42; Gould Decl. ¶¶ 4–6; Doc. #88 ("Timko Decl.") ¶¶ 3–4). Plaintiff concedes neither were present for his initial seizure or the takedown at the vehicle (Pl. Opp. at 15), but contends Gould entered the Barracks "immediately following the takedown" and interacted with him while he was restrained (id. at 7). Plaintiff alleges Gould came in "[a]fter the assault ended" and asked whether plaintiff needed medical attention, and plaintiff responded he wanted to report the assault and press charges. (Compl. ¶¶ 74–75). Plaintiff testified Gould "verbally" assaulted him, but acknowledged he may have been confusing Gould with Timko. (Defs.' 56.1 ¶¶ 32–33; Brooks Dep. at 130–31, 135).

Timko photographed the injuries of plaintiff, Finnegan, and Wollman. The photographs depict abrasions, scratches and bruises. Plaintiff sustained scrapes and bruises.

Timko also interviewed plaintiff and prepared an "Administrative Investigation Report," which does not include any allegation of excessive force against any NYSP personnel. The report states that Brooks was not injured and declined medical attention. (Timko Decl. ¶¶ 5–6; Ex. A). Plaintiff disputes the accuracy of the report and claims he "immediately accused officers of assault and complained of pain and breathing difficulty both at the scene and inside the barracks." (Pl. Opp. at 16).

V. The Vehicle Search, Charges, and Disposition

Following plaintiff's arrest, Gould searched the vehicle and found burnt marijuana residue and marijuana pipes, as well as an antique replica black-powder pistol Harding said was hers.[3] In his interrogatory responses, plaintiff states that 1.2 ounces of "cannabis dispensary medication" was seized from him. (Harben Decl. Ex. F at 6).

[3] Harding was arrested for possessing an unlicensed firearm. Her separate lawsuit arising from that arrest was dismissed. See Harding v. Finnegan, 22-cv-6285 (S.D.N.Y. Sept. 26, 2024).

Gould initially intended to charge plaintiff with unlawful possession of marijuana under New York Penal Law § 221.05. (Defs.' 56.1 ¶ 39). But after a representative of the Westchester County District Attorney's Office told him the office was not then prosecuting such offenses, Gould did not prepare an accusatory instrument on that charge. (Gould Decl. ¶ 12). Instead, Gould prepared accusatory instruments charging plaintiff with assault in the second degree (N.Y. Penal Law § 120.05), disorderly conduct (N.Y. Penal Law § 240.20), and resisting arrest (N.Y. Penal Law § 205.30). (Gould Decl. Ex. C). Gould based those charges on what Finnegan and Wollman told him, including that plaintiff was "punching and kicking them while they tried to arrest him" (Gould Decl. ¶ 4), and on his observation of their injuries.

Plaintiff disputes the accuracy of what Finnegan and Wollman told Gould. (Pl. Opp. at 10).

Plaintiff thereafter obtained an adjournment in contemplation of dismissal of the disorderly conduct and resisting arrest charges, and on May 1, 2022, those charges were dismissed. On the same date, the assault charge was withdrawn.

Plaintiff commenced this action on July 24, 2022.

## DISCUSSION

### I. Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any declarations show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[4]

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

A fact is material when it "might affect the outcome of the suit under governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "[T]he mere existence of a scintilla of evidence" supporting the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary

judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77,82–83 (2d Cir. 2004). Bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

Finally, "it is well established that a court is ordinarily obligated to afford a special solicitude to pro se litigants, particularly where motions for summary judgment are concerned." Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016).

II. Federal and State False Arrest Claims (Counts III and IV)

Defendants argue they are entitled to summary judgment on plaintiff's false arrest claims as to Finnegan and Wollman because the undisputed facts show there was probable cause to arrest plaintiff, and, as to Gould, because he reasonably relied on the information his fellow officers provided.

The Court agrees.

A. Legal Standard

A Section 1983 claim for false arrest "is substantially the same as a claim for false arrest under New York law." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012). An action for false arrest requires that the plaintiff show "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Id.

A plaintiff cannot prevail on a false arrest claim if the arresting officer had probable cause to arrest. Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). Probable cause exists if officers have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be

arrested." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006).

"Probable cause does not require absolute certainty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). Indeed, "some exculpatory evidence does not make an arrest illegal when the totality of evidence still establishes probable cause to believe that the suspect committed the crime." Stansbury v. Wertman, 721 F.3d 84, 94 (2d Cir. 2013). In assessing probable cause, the Court must only "consider those facts available to the officer at the time of the arrest and immediately before it." Id.

To defeat a false arrest claim, an arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged. Devenpeck v. Alford, 543 U.S. 146, 153 (2004); Jaegly v. Couch, 439 F.3d 149, 153–54 (2d Cir. 2006). As long as there was probable cause to arrest the plaintiff for some offense, a false arrest claim will fail. Jaegly v. Couch, 439 F.3d at 152. The fact that charges are later dismissed does not affect whether there was probable cause at the time of arrest. Davis v. Ventimiglia, 2009 WL 4910047, at *4 (S.D.N.Y. Dec. 21, 2009).[5]

B. Finnegan and Wollman

The sequence of events leading up to plaintiff's arrest establish Finnegan and Wollman had "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution" that plaintiff was in possession of marijuana, which was not legal in New York at that time.[6] Panetta v. Crowley, 460 F.3d 388 at 395.

[5] Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d. Cir. 2009).

[6] Defendant Gould had initially intended to charge plaintiff with unlawful possession of marijuana under New York Penal Law § 221.05 but ultimately did not prepare an accusatory instrument on that charge. This law has since been repealed.

The undisputed facts are as follows: plaintiff told Wollman the only way he could calm down was to use his "medication" (Defs.' 56.1 ¶ 11); he left the Barracks to have a "smoke" (id. at ¶ 12); Finnegan and Wollman asked Brooks if he had a valid medical authorization card for "the weed you say you were going to smoke" (Harben Decl., Exh. D at 0:12–0:18); plaintiff informed defendants he had a medical marijuana card, and Finnegan and Wollman advised him that this card was not valid in New York (id. at 0:38–-0:51); plaintiff claimed the medical marijuana card was valid nationally (id. at 0:51-0:56); when asked whether he possessed marijuana, plaintiff responded with an insult (id. at 0:51—0:56); and at no point did plaintiff deny having marijuana.

Based on these undisputed facts, officers in Finnegan and Wollman's position would have probable cause to believe plaintiff possessed marijuana on the premises.

Plaintiff disputes that the officers smelled marijuana, and he and his family maintain he was rolling a tobacco cigarette. He also disputes that he said he was going to smoke a "joint." (Pl. Opp. at 9). But even crediting plaintiff's version of events, which the Court must do at this stage, defendants are still entitled to summary judgment. For instance, even if plaintiff was, in fact, smoking tobacco, the officers still, at the time of his arrest, would have had "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution" that plaintiff was in possession of marijuana. Panetta v. Crowley, 460 F.3d 388 at 395.

Therefore, because the undisputed facts show Finnegan and Wollman had probable cause to arrest plaintiff, Finnegan and Wollman are entitled to summary judgment on the false arrest claims. See Davis v. City of New York, 2017 WL 1184287, at *3 (S.D.N.Y. Mar. 28,

2017).[7]

C. Gould[8]

Defendants argue that, even though Gould was not present during the events in question, he is entitled to qualified immunity because he reasonably relied on information provided to him by the other law enforcement officers.

The Court agrees.

"An officer who participates in the arrest is immune from suit in his or her individual capacity under the doctrine of qualified immunity if it was objectively reasonable for him to rely on a fellow officer's report indicating the existence of probable cause." Lauderdale v. City of New York, 2018 WL 1413066, at *5 (S.D.N.Y. Mar. 19, 2018). Thus, even when an officer is not "aware of all the underlying facts that provided probable cause or reasonable suspicion, [he] may nonetheless act reasonably in relying on information received by other law enforcement officials." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001).

Here, the undisputed record establishes that Gould was not present during the interaction between Wollman, Finnegan, and plaintiff during the arrest, but relied on their accounts about

---

[7] Defendants further claim Finnegan and Wollman had probable cause to arrest plaintiff for second degree assault (N.Y. Penal Law § 120.05), disorderly conduct (N.Y. Penal Law § 240.20), and resisting arrest (N.Y. Penal Law § 205.30). Because the Court finds there was probable cause to arrest for unlawful possession of marijuana, it need not decide whether there was probable cause to arrest for those charges in order to resolve the false arrest claim, as "a false arrest claim fails if there was probable cause to arrest the plaintiff for any offense." Banyan v. Sikorski, 2024 WL 2137882, at *8 (S.D.N.Y. May 13, 2024), aff'd, 2026 WL 1074659 (2d Cir. Apr. 21, 2026).

[8] It is unclear whether plaintiff intends to bring the false arrest claims against Gould. Count III in the complaint names Finnegan and Wollman only, but the supporting paragraphs also include references to Gould. (Compl. ¶¶ 124, 126). However, pro se complaints should be "construed liberally in favor of the pro se litigant." Tapia–Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam). Liberally construing the complaint, the Court understands plaintiff to be bringing false arrest claims against Gould.

the preceding events when processing the arrest. The Court finds it was objectively reasonable for Gould, who did not arrive until after plaintiff had been handcuffed, to rely on the accounts of the two on-scene officers in processing the arrest. See Kayo v. Mertz, 531 F. Supp. 3d 774, 795 (S.D.N.Y. 2021) (officer entitled to qualified immunity because it was objectively reasonable for him to rely on the accounts of the four on-scene officers).

Gould is therefore entitled to summary judgment on the false arrest claims.

## III. Malicious Prosecution Claim (Count VI)

Defendants argue they are entitled to summary judgment on plaintiff's malicious prosecution claim because there was probable cause to believe plaintiff committed a crime, and because Gould reasonably relied on his fellow officers.

The Court agrees as to Gould, but disagrees as to Finnegan and Wollman.

### A. Legal Standard

"[A] claim of malicious prosecution brought under § 1983 is governed by state law." Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995). To prove a malicious prosecution claim under New York law, a plaintiff must establish the following elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Id.[9]

"Because lack of probable cause is an element of a malicious prosecution claim, the

---

[9] The parties do not brief whether plaintiff can establish the elements of a malicious prosecution claim other than the element of lack of probable cause. Therefore, the Court only addresses whether there was probable cause to believe plaintiff committed a crime. The Court notes, however, that surviving summary judgment on probable cause does not mean plaintiff will carry his burden at trial on the other elements, including that each defendant acted with actual malice.

existence of probable cause is a complete defense to a claim of malicious prosecution." Stansbury v. Wertman, 721 F.3d 84, 94-95 (2d Cir. 2013).

Although a false arrest claim fails if there was probable cause to arrest the plaintiff for any offense, in the malicious prosecution context, there must be probable cause for each offense charged. Devenpeck v. Alford, 543 U.S. 146, 153 (2004); Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991).

B. Finnegan and Wollman

Plaintiff was charged with second degree assault (N.Y. Penal Law § 120.05), disorderly conduct (N.Y. Penal Law § 240.20), and resisting arrest (N.Y. Penal Law § 205.30). The Court addresses each in turn.

1. Resisting Arrest

Under New York law, "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer . . . from effecting an authorized arrest of himself or another person." N.Y. Penal Law § 205.30. Here, there is a material factual dispute whether the officers had probable cause to believe plaintiff resisted arrest. Defendants argue that plaintiff was repeatedly directed to step out of the vehicle and, after plaintiff did not comply, Finnegan and Wollman removed him from the vehicle. (Defs.' 56.1 ¶¶ 27–29). According to defendants, plaintiff continued to struggle and kicked and punched the officers as they removed him from the vehicle. (Wollman Decl. ¶¶ 12–13; Finnegan Decl. ¶¶ 15–16). As a result of plaintiff's resistance, Finnegan, Wollman, and plaintiff all fell to the pavement.

Plaintiff proffers a very different version of events. He testified the officers did not give clear commands before they "were already grabbing me and ripping me out of the car." (Brooks Dep. Tr. 115). He also testified he was then "thrown to the ground, slammed on, stomped on,"

and could "hear my family screaming in the background." (Id. Tr. 119). Harding testified she did not hear any officer instruct plaintiff to exit the vehicle before the officers grabbed him. (Harding Dep. Tr. 47). She attests that plaintiff was not resisting the officers.

Accordingly, there is a material issue of fact regarding whether plaintiff was resisting arrest and, therefore, the Court cannot determine that there was probable cause to arrest plaintiff for resisting arrest.

Defendants argue that the audio evidence corroborates their version of events—it "makes it clear that orders to exit the vehicle were given." (Doc. #98 ("Defs.' Reply") at 2). Although probative, the video evidence submitted in connection with defendants' motion is not clear enough to warrant summary judgment as to whether plaintiff resisted arrest. For example, a reasonable jury could conclude defendants reached for plaintiff prior to orders being given, as the audio does not clearly portray the altercation between plaintiff and Finnegan and Wollman.

As such, the video evidence "does not conclusively resolve material fact issues." Alvear v. Kamel, 2023 WL 5593914 at *2 (E.D.N.Y. Aug. 29, 2023). Nor does it "utterly discredit[ ]" one party's testimony. Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007). Therefore, the evidence does not compel the granting of summary judgment for defendants.

2. Assault in the Second Degree

A person is guilty of assault in the second degree when one attempts to, "[w]ith intent to prevent . . . a police officer . . . from performing a lawful duty . . . causes physical injury to such . . . police officer." N.Y. Penal Law § 120.05(3).

It is undisputed Finnegan and Wollman sustained abrasions. But whether there was probable cause to believe plaintiff caused those injuries with the requisite intent is disputed.

According to Finnegan and Wollman, plaintiff kicked and punched the officers when

they removed him from the vehicle. But according to plaintiff, he did not strike the officers. Rather, he claims Finnegan and Wollman seized him without warning and pulled him out of the vehicle, and all three fell to the pavement.

Drawing all reasonable inferences in favor of the non-moving party, a reasonable jury could conclude the officers' injuries resulted from their own takedown of plaintiff rather than from any intentional act by plaintiff, and thus there was no reason to believe plaintiff intended to injure them or to prevent them from performing their duties.

Accordingly, the Court finds there are material issues of fact that cannot be resolved at this stage as to whether there was probable cause to prosecute plaintiff for assault in the second degree.

3. Disorderly Conduct

A person is guilty of disorderly conduct when he "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . engages in fighting or in violent, tumultuous or threatening behavior." N.Y. Penal Law § 240.20(1). Here, too, it is unclear whether the officers had sufficient facts to believe plaintiff was engaged in disorderly conduct in violation of Section 240.20(1). As discussed above, the parties dispute the events leading up to plaintiff's arrest, and the video evidence is inconclusive. Thus, the Court cannot find, as a matter of law, that the officers had probable cause to prosecute plaintiff for disorderly conduct.

Accordingly, plaintiff's malicious prosecution claim against Finnegan and Wollman may proceed.

C. Gould

Gould was not present for the events in question. However, he prepared the accusatory

instruments charging plaintiff with resisting arrest, assault in the second degree, and disorderly conduct based on information he received from Finnegan and Wollman, as well as his own observation of their injuries.

Here, Gould had probable cause to charge plaintiff with the above offenses based on Finnegan and Wollman's report that plaintiff was "punching and kicking them while they tried to arrest him." (Gould Decl. ¶ 4). Because he was "entitled to reasonably rely on information received from other officers as the basis for a probable cause determination," Gould is entitled to qualified immunity. Forte v. City of New York, 2018 WL 4681610, at *13 (S.D.N.Y. Sept. 28, 2018).

Accordingly, Gould is entitled to summary judgment on plaintiff's malicious prosecution claim.

## IV. Excessive Force Claim[10]

Defendants argue plaintiff's excessive force claim fails as a matter of law because the initial use of force to remove plaintiff from his vehicle was reasonable and not a gratuitous infliction of pain.

The Court agrees inasmuch as plaintiff alleges an excessive force claim against Officer Gould but disagrees as to plaintiff's excessive force claim against Officers Finnegan and Wollman.

### A. Legal Standard

"A police officer violates the Fourth Amendment if the amount of force he uses in

[10] Although the complaint does not contain a separately numbered excessive force claim, it alleges Finnegan and Wollman beat plaintiff during and after his arrest. Because of plaintiff's pro se status, the Court liberally construes the complaint to assert a Fourth Amendment excessive force claim.

effectuating an arrest is objectively unreasonable' in light of the facts and circumstances confronting the officer." Lennox v. Miller, 968 F.3d 150, 155 (2d Cir. 2020). Determining "whether an officer has used excessive force requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "The fact that a person whom a police officer attempts to arrest resists no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit." Brown v. City of New York, 798 F.3d 94, 103 (2d Cir. 2015). Because police officers often must use some degree of force when arresting or otherwise lawfully "seizing" an individual, the Supreme Court has recognized "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 396 (1989).

"In light of the fact-specific nature of the inquiry on an excessive force claim, granting summary judgment against a plaintiff on such a claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Lennox v. Miller, 968 F.3d at 155.

B. Finnegan and Wollman

Plaintiff alleges: (i) Finnegan used excessive force against him when he elbowed plaintiff in the parking lot and (ii) Finnegan and Wollman used excessive force against him in connection with plaintiff's removal from the vehicle and within the Barracks.

1. Alleged Elbow in the Parking Lot

To the extent plaintiff alleges that Finnegan used excessive force against him when he elbowed him in the parking lot, that type of contact does not constitute unlawful excessive force.

"Pushes or shoves that cause no injury cannot support an excessive force claim." Ferebee v. City of New York, 2017 WL 2930587, at *8 (S.D.N.Y. July 6, 2017).

According to plaintiff, Finnegan elbowed plaintiff in the chest without provocation while walking past him in the parking lot. Defendants dispute that Finnegan first elbowed plaintiff in the chest. Rather, Finnegan states he made "incidental contact nudging Plaintiff with my forearm" because plaintiff "got into my personal space thrusting his telephone toward my face." (Finnegan Decl. ¶ 8).

Even accepting plaintiff's account, this single, brief contact—which occurred before any arrest and which plaintiff does not contend caused him any injury—is not the sort of "push or shove" that violates the Fourth Amendment. Graham v. Connor, 490 U.S. at 396.

Accordingly, Finnegan is entitled to summary judgment on the excessive force claim to the extent it is based on the alleged elbow in the parking lot.

2. Removal from the Vehicle and Events Inside the Barracks

The parties present divergent accounts of the facts at issue, all of which go to the heart of plaintiff's excessive force claim based on plaintiff's removal from the vehicle and the events that occurred inside the Barracks. Whether the officers' use of force was excessive under the Fourth Amendment turns on whether plaintiff was resisting arrest or attempting to evade arrest, as well as the degree of force used.

These facts are genuinely in dispute.

As to the removal from the vehicle, plaintiff contends that, while removing him from the

vehicle, the officers grabbed him, forcibly shoved him to the ground, and applied body weight while he stated he could not breathe. Duryea and Harding testified to the same.

Defendants argue plaintiff's non-compliance with their orders to exit the vehicle required them to use force to remove him from the vehicle, resulting in both plaintiff and defendants falling to the pavement. According to defendants, this initial force was "reasonable and not a gratuitous infliction of pain" and precludes plaintiff's excessive force claim. (Doc. #86 at 8).

At summary judgment, the Court cannot credit the testimony of Finnegan and Wollman over plaintiff, or vice versa; nor can it determine the credibility of any witness. See Fincher v. Depository Tr. & Clearing Corp., 604 F.3d, 712, 725 (2d Cir. 2010).

Plaintiff also alleges the officers applied additional force inside the Barracks. Plaintiff testified that Finnegan and Wollman punched and kicked him while he was handcuffed. Plaintiff's account does not rest on his testimony alone. Although neither Harding nor Duryea saw what happened in the back room, both testified that they heard fighting. Harding heard "blows being landed and [her] cousin screaming." (Harding Dep. at Tr. 50). Duryea heard fighting and her "son screaming" after plaintiff was taken "back behind the lobby door." (Duryea Dep. Tr. 55).

Defendants do not argue that this force, if used, would have been reasonable. Instead, they contend plaintiff's account should not be believed because Timko's photographs do not reflect serious injuries, no medical records support the beating plaintiff describes, and plaintiff did not report any use of force to Timko. But these arguments go to plaintiff's credibility and the weight of the evidence. Those questions are for the jury, not for the Court on summary judgment. See Congemi v. Wal-Mart Stores E., LP, 2021 WL 4066653, at *8 (S.D.N.Y. Sept. 7, 2021).

Regardless, even assuming that plaintiff suffered no physical injury at all, this would not exonerate Finnegan and Wollman from a claim for the use of excessive force. Summary judgment should not be granted on an excessive force claim "merely because the injuries were minor." Ketcham v. City of Mount Vernon, 992 F.3d 144, 150 (2d Cir. 2021). And "the fact that [plaintiff] did not complain of [his] injuries at the time does not conclusively refute [his] claim that [Finnegan and Wollman] used excessive force." Ortega v. Moran, 2022 WL 17092584, at *4 n.22 (D. Conn. Nov. 21, 2022). At bottom, the facts as viewed in the light most favorable to plaintiff give rise to a genuine issue of fact as to whether Finnegan and Wollman used excessive force inside the Barracks.

Accordingly, Finnegan and Wollman are not entitled to summary judgment on the excessive force claim based on the removal from the vehicle and the events inside the Barracks.

C. Qualified Immunity

Defendants also argue the excessive force claims as to Finnegan and Wollman should be dismissed on the basis of qualified immunity.

The Court disagrees.

Qualified immunity shields government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad and protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Salim v. Proulx, 93 F.3d 86, 89

(2d Cir. 1996). "Defendants bear the burden of establishing qualified immunity." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

In the context of an excessive force claim, since the law in this area is well-established, "the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995); see also O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003) ("[I]n Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry on the merits.")

Here, as discussed above, there is a genuine factual dispute concerning whether Wollman and Finnegan used excessive force against plaintiff. Plaintiff's Fourth Amendment right to be free from the use of excessive force was clearly established at the time of the allegedly unlawful conduct. See Washpon v. Parr, 561 F. Supp. 2d 394, 407–08 (S.D.N.Y. 2008). And because the Court cannot say as a matter of law that the officers' actions were reasonable, they are not entitled to qualified immunity.

D. Gould

To the extent plaintiff brings an excessive force claim against Gould, that claim is dismissed.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994).

Here, plaintiff concedes Gould was not present during the initial seizure or the takedown. (Pl. Opp. at 8, 15). Accordingly, because Gould was not personally involved in the alleged constitutional violation, he is entitled to summary judgment.

V. Failure to Intervene Claim (Count VII)

Defendants argue plaintiff, as a matter of law, cannot establish a failure-to-intervene claim against Gould.

The Court agrees.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). "Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." Jean-Laurent v. Wilkerson, 461 F. App'x 18, 21 (2d Cir. 2012) (summary order). "However, in order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id.

Here, the record does not support the claim that Gould witnessed the allegedly unlawful conduct, encouraged or acquiesced in such conduct, or had a realistic opportunity to prevent the alleged use of excessive force. Plaintiff concedes Gould was not present during the initial seizure or takedown. To the extent plaintiff argues that Gould could have intervened during the alleged unlawful conduct that happened back in the Barracks, that claim is precluded because the record establishes Gould came in after the alleged assaults. (See Docs. #94 ("Brooks Dep.") at Tr. 131; Compl. at ¶ 74).

For these reasons, Gould is entitled to summary judgment on the failure to intervene claim.

VI. State Law Claims

Defendants argue plaintiff's assault and battery claims are time-barred.

The Court agrees.

Under New York law, "an action to recover damages" for assault or battery is covered by a one-year statute of limitations. N.Y. C.P.L.R § 215(3). Here, the conduct of which plaintiff complains occurred on July 26, 2019, approximately three years before he filed this action.

Executive orders issued by the Governor of New York during the COVID-19 pandemic tolled the statute of limitations for lawsuits brought in New York from March 20, 2020, through November 3, 2020, a period of 228 days. Bethea v. Children's Vill., 225 A.D. 3d 580, 581 (2d Dep't 2024); McLaughlin v. Snowlift, Inc., 214 A.D. 3d 720, 721 (2d Dep't 2023). But even accounting for the tolling, the limitations period here expired on March 12, 2021—more than a year before plaintiff commenced this action.

Accordingly, defendants are entitled to summary judgment on the state law assault and battery claims.

VII. Remaining Claims

Although defendants nominally moved for summary judgment with respect to all claims in the complaint, they do not make any specific argument with respect to plaintiff's First Amendment retaliation claims under Section 1983 and the New York State Constitution (Counts I and II), and plaintiff's claim for denial of the right to a fair trial (Count VIII).

To prevail on a motion for summary judgment, a movant must specifically identify relevant facts and explain why those facts justify granting summary judgment under the relevant laws. It is not the Court's role to raise arguments for parties represented by counsel. Xiamen ITG Group Corp., Ltd. v. Peace Bird Trading Corp., 2025 WL 3460317, at *3 (E.D.N.Y. Sept. 12, 2025). Accordingly, defendants' motion as to Counts I, II, and VIII, must be denied.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

To summarize, defendants are entitled to summary judgment on the following: (i) the false arrest claims under Section 1983, New York law, and the New York Constitution (Counts III and IV), against all defendants; (ii) the malicious prosecution claim (Count VI) against Gould; (iii) the excessive force claim against Gould, and against Finnegan to the extent it is based on the alleged elbow in the parking lot; (iv) the failure to intervene claim (Count VII) against Gould; and (v) any state law assault and battery claims.

The following claims may proceed: (i) the malicious prosecution claim (Count VI) against Finnegan and Wollman; (ii) the excessive force claim against Finnegan and Wollman, based on the removal of plaintiff from the vehicle and the events inside the Barracks; (iii) the First Amendment retaliation claims (Counts I and II) against all defendants; and (iv) the fair trial claim (Count VIII) against all defendants.

The Court will conduct a case management conference on **January 12, 2027, at 11:30 a.m.**, to be held in person at the White Plains courthouse, Courtroom 620, at which time the parties shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case. To be clear, the parties are directed to discuss settlement in good faith prior to that date.

On September 29, 2022, the Court denied without prejudice plaintiff's application for the Court to request pro bono counsel. (Doc. #9). To the extent plaintiff wishes to renew that

application, which the Court would be inclined to grant, he may do so by notifying the Court by letter by no later than **December 11, 2026.**

Chambers will mail a copy of this Opinion and Order, as well as copies of all unpublished opinions cited herein, to plaintiff at the address on the docket.

The Clerk is instructed to terminate the motion. (Doc. #84).

Dated: November 12, 2026
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge